ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **OSCAR RODRÍGUEZ DE JESÚS**<br><br>Recurrente<br><br>v.<br><br>**SUNRUN, INC.**<br><br>Recurrido | TA2025RA00256 | **REVISIÓN** procedente del Departamento de Asuntos del Consumidor (DACO)<br><br>Caso Núm: **SAN-2024-0019423**<br><br>Sobre: Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACO) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de octubre de 2025.

Comparece por derecho propio y como indigente[1], el señor Oscar Aníbal Rodríguez de Jesús (señor Rodríguez de Jesús o recurrente) y solicita la revisión de la *Resolución* emitida el 15 de septiembre de 2025, por el Departamento de Asuntos del Consumidor (DACo). Mediante la misma, la agencia ordenó el cierre y archivo de la querella presentada por el recurrente por falta de jurisdicción.

Por las razones que expondremos a continuación, se confirma la determinación recurrida.

**I.**

Según surge del expediente, el señor Rodríguez de Jesús instó una querella (SAN-2024-0019423) contra Sunrun, Inc., al amparo de la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del*

---

[1] Se declara *Ha Lugar* la *Solicitud para Declaración de Indigencia* instada por el señor Rodríguez de Jesús.

*Consumidor*[2]. En esencia, alegó que, en el 2022, un vendedor de Máximo Solar le ofreció sus servicios para el alquiler de un sistema solar fotovoltaico. Añadió que nunca vio ni firmó ningún contrato, más este se le envió un año después. Arguyó que el sistema le dio problemas a una semana de haber sido instalado y que cuando se iba la luz, el equipo nunca funcionaba, por lo que se quedaba sin servicio de energía eléctrica. Además, esbozó que los técnicos de la compañía le indicaron que el inversor estaba dañado. Precisó que no deseaba el equipo en su casa por incumplimiento de contrato y fraude de la compañía. Solicitó al DACo que ordenara la cancelación del contrato y el retiro de las placas solares de su propiedad, así como la reparación de cualquier daño causado al techo de su casa.

Tras varios trámites, y al palio de la Regla 11.1 del *Reglamento de Procedimientos Adjudicativos del DACo*[3], el ente administrativo determinó que no existía controversia esencial sobre ningún hecho material, por lo que procedía, como cuestión de derecho, resolver de forma sumaria el caso. Así las cosas, el 15 de septiembre de 2025, se dictó el pronunciamiento impugnado, el cual incluyó las siguientes determinaciones de hechos:

1. En o alrededor del mes de septiembre de 2022, el querellante Oscar Rodríguez (en adelante parte querellante), otorgó un contrato[4] para el alquiler de un sistema solar fotovoltaico para generar energía eléctrica con la compañía Sunrun PR Operations LLC (en adelante parte querellada o Sunrun). Mediante el mismo, las partes acordaron el alquiler de un sistema solar fotovoltaico para generar energía eléctrica con batería(s) que fue instalado en una residencia propiedad de la parte querellante.

2. En o alrededor del día 8 de julio de 2024, la parte querellante presentó ante el DACO la querella de epígrafe alegando, en síntesis, un incumplimiento de contrato sobre la capacidad y/o funcionamiento del sistema instalado, la energía que el sistema fotovoltaico generaría y representaciones incorrectas en cuanto al equipo instalado.

---

[2] 3 LPRA sec. 341, *et seq.*
[3] Reglamento Núm. 8034 de 2011.
[4] El DACo hizo constar que copia del acuerdo intitulado *Contrato de Sunrun Brightbox*™ firmado entre las partes obraba en el expediente administrativo.

3.  La parte querellante solicitó como remedio mediante su querella la cancelación del contrato y el retiro del equipo de placas de su residencia, incluyendo la reparación de cualquier daño ocasionado al techo de su casa, si alguno. Esto debido a los alegados problemas de funcionamiento e incumplimientos de servicio y garantía.

4.  Como parte del trámite adjudicativo del DACO, se revisó y examinó la totalidad del expediente administrativo. En el expediente administrativo obra copia del contrato firmado entre las partes. Dicho contrato cuenta con una sección específica, la cual establece lo siguiente: "**RESOLUCIÓN INFORMAL DE DISPUTAS**. **Las Partes aceptan intentar primero resolver cualquier Disputa de manera informal y de buena fe**. Asimismo, usted acepta enviar una notificación escrita de la Disputa a la dirección que figura en la Sección G (12) del Contrato. Sunrun enviará una notificación escrita de la Disputa a la dirección del Hogar. **Si las Partes no llegan a un acuerdo informal para resolver la Disputa dentro de los 45 días posteriores a la recepción de la notificación de Disputa, usted o Sunrun podrán comenzar las acciones formales que se detallan a continuación**. Todos los estatutos de limitación y defensa aplicables basados en el paso del tiempo se contabilizarán para los 45 días durante los cuales las partes intentan resolver una Disputa de manera informal. Si usted reclama deficiencias en la instalación o el funcionamiento del Sistema solar, debe permitirnos inspeccionar visualmente el Sistema solar y obtener o descargar los datos de rendimiento pertinentes del Sistema solar." (Énfasis nuestro).

5.  **El contrato suscrito entre las partes contiene en su cláusula número 11 (b) una cláusula de arbitraje** clara y detallada que dispone, en lo pertinente, lo siguiente:

    "SI LAS PARTES NO PUEDEN RESOLVER LA DISPUTA DE MANERA INFORMAL, LA DISPUTA, INCLUYENDO LA DETERMINACIÓN DEL ALCANCE O LA APLICABILIDAD DE ESTE ACUERDO DE ARBITRAJE, SE DETERMINARÁ MEDIANTE ARBITRAJE VINCULANTE ANTE UN ÁRBITRO. EL ARBITRAJE SERÁ EL ÚNICO MEDIO DE RESOLUCIÓN DE CONTROVERSIAS, SALVO QUE UNA DE LAS PARTES TENGA PERMITIDO PRESENTAR UNA RECLAMACIÓN ANTE UN TRIBUNAL QUE ENTIENDE EN CAUSAS MENORES (EN TANTO Y EN CUANTO EL MONTO CONTROVERTIDO SEA MENOR QUE EL LÍMITE DE RECLAMACIÓN PARA ESE TRIBUNAL) EN LUGAR DE SOMETERSE A ARBITRAJE, SIEMPRE QUE ESE TRIBUNAL TENGA COMPETENCIA SOBRE LA CONTROVERSIA, Y LA CONTROVERSIA SEA EXCLUSIVAMENTE EN SU NOMBRE Y NO EN NOMBRE DE OTRA PERSONA. SI LA CONTROVERSIA SE TRANSFIERE A OTRO TRIBUNAL O SE APELA ANTE OTRO TRIBUNAL EN CUALQUIER MOMENTO, SUNRUN SE RESERVA EL DERECHO DE OPTAR POR QUE LA CONTROVERSIA SE RESUELTAA POR ARBITRAJE, CONFORME AQUÍ SE ESTIPULA. EL

ARBITRAJE IMPLICA QUE USTED RENUNCIA A SU DERECHO DE JUICIO POR JURADO Y QUE TODAS LAS DISPUTAS SERÁN DECIDIDAS POR UN ÁRBITRO. ESTE ACUERDO PARA ARBITRAR LAS DISPUTAS ESTÁ REGIDO POR LA LEY FEDERAL DE ARBITRAJE (*FEDERAL ARBITRATION ACT "FAA"*). EL ARBITRAJE SERÁ ADMINISTRADO POR JAMS DE CONFORMIDAD CON SUS REGLAS Y PROCEDIMIENTOS DEL ARBITRAJE SIMPLIFICADO. EL ARBITRAJE ESTARÁ A CARGO DE LA OFICINA DE JAMS MÁS CERCANA AL HOGAR. LA SENTENCIA SOBRE LA DECISIÓN PODRÁ SER PRESENTADA EN CUALQUIER TRIBUNAL QUE TENGA JURISDICCIÓN. ESTA CLÁUSULA NO IMPIDE QUE LAS PARTES PRETENDAN MEDIDAS PROVISIONALES PARA CONTRIBUIR AL ARBITRAJE POR PARTE DE UN TRIBUNAL QUE TENGA JURISDICCIÓN COMPETENTE. EL ÁRBITRO PODRÁ, EN EL LAUDO, ASIGNAR LA TOTALIDAD O PARTE DE LOS COSTOS DEL ARBITRAJE, INCLUIDOS LOS HONORARIOS DEL ÁRBITRO Y LOS HONORARIOS RAZONABLES DE ABOGADOS DE LA PARTE VENCEDORA. SIN PERJUICIO DE DISPOSICIÓN EN CONTRARIO DE ESTA SECCIÓN O ESTE CONTRATO, LO ESTIPULADO EN ESTE CONTRATO NO TIENE LA INTENCIÓN DE OBSTACULIZAR O RESTRINGIR SU CAPACIDAD DE SOLICITAR ASISTENCIA DE LA COMISIÓN DE ENERGÍA DE PUERTO RICO (PUERTO RICO ENERGY BUREAU) PARA REVISAR LAS FACTURAS O RESOLVER LAS CONTROVERSIAS EN VIRTUD DE LOS ARTICULOS 6.4 Y 6.27 DE LA LEY DE TRANSFORMACIÓN Y ALIVIO ENERGÉTICO DE PUERTO RICO Y SUS REFORMAS (LEY DE PUERTO RICO 57-2014)". (Énfasis nuestro).

6. **Mediante las alegaciones de la parte querellante en su querella no se cuestiona la validez de la cláusula de arbitraje**. Lo alegado en la querella gira en torno a las representaciones realizadas al momento de la venta e instalación, el funcionamiento del sistema y la capacidad del sistema para generar energía, más los alegados incumplimientos de garantía y servicio. (Énfasis nuestro).

7. **El contrato objeto de la querella fue firmado por ambas partes, más el querellante colocó sus iniciales en cada página**. (Énfasis nuestro).

8. El Negociado de Energía de Puerto Rico (en adelante, Negociado de Energía), es la agencia con jurisdicción primaria para atender asuntos de medición neta en virtud de su Ley orgánica, Ley Núm. 57 de 2014.

El DACo concluyó que la querella de epígrafe versaba sobre el descontento del señor Rodríguez de Jesús con la producción y/o el funcionamiento del sistema fotovoltaico, por lo cual pretendía que se le librara de responsabilidad en cuanto al contrato pactado. Por igual, la agencia determinó que las alegaciones sobre la producción

versus el consumo eran asuntos que debían reclamarse ante el Negociado de Energía, entidad en ley autorizada a dirimir dichas controversias. Particularizó que en ninguna parte de sus alegaciones el señor Rodríguez de Jesús atacaba la presunción de validez de la cláusula de selección de foro. Ante ello, dictaminó que no ostentaba jurisdicción para considerar los méritos de la querella de referencia debido a la cláusula de arbitraje incluida en el contrato pactado entre el señor Rodríguez de Jesús y la compañía de placas solares. Añadió que las alegaciones y el remedio solicitado por el señor Rodríguez de Jesús estaban dentro del ámbito de lo que era arbitrable. Por consiguiente, ordenó el cierre y archivo de la querella.

Inconforme, el señor Rodríguez de Jesús acude ante nos y, aunque no hace ningún señalamiento de error, reitera que el contrato con la compañía Sunrun no es válido y que existen piezas del sistema dañadas. Menciona que advino en conocimiento que Máximo Solar y Sunrun se fueron a la quiebra y eso lo afectaba. Requiere que ordenemos la remoción del equipo del techo de su casa.

A tenor con la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025), este Foro puede "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho, y proveer el más amplio acceso al tribunal, de forma que no se impida impartir justicia apelativa a la ciudadanía.". Ante ello, prescindimos de la comparecencia de la parte recurrida.

## II.

### A.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias

administrativas. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE*, 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[5]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[6] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones

---

[5] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[6] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez v. Consejo de Titulares,* supra, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez v. Consejo de Titulares,* supra, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633 (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le

corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

En Puerto Rico existe el principio de la libertad de contratación. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011). El contrato es el negocio jurídico bilateral por el cual dos (2) o más partes expresan su consentimiento en la forma prevista por la ley para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9751.

El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Existe consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación. Arts.1237 y 1238 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 9771 y 9772.

No obstante, ante la inexistencia de alguno de los requisitos antes mencionados, el contrato podrá ser nulo o anulable. El causante del dolo, la violencia o la intimidación queda sujeto a la indemnización de los daños y perjuicios resultantes. La prueba de la existencia del vicio y de su carácter incumbe a quien lo alega. Arts. 285 y 286 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 6191 y 6192.

Es a partir del perfeccionamiento de un contrato, que las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste, ello conforme a la buena fe, al uso y a la ley. *Álvarez v. Rivera*, 165 DPR 1, 19 (2005). Cuando un contrato es legal, válido y carente de vicios del consentimiento, constituye la ley entre las partes y debe cumplirse a tenor de éste. *Íd.* La persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios

causados. Art. 1158 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9303.

Debe tenerse presente que el principio de la autonomía contractual no es irrestricto y está sujeto a la intervención de los tribunales. Sin embargo, esas intervenciones deben proceder con sensatez y cautela, solamente cuando una de las prestaciones resulte excesiva, abusiva y una desproporción intolerable en las prestaciones. *Coop. Sabaneña v. Casiano Rivera,* supra, págs. 181-182.

## C.

De otro lado, el arbitraje es un proceso mediante el cual las partes voluntariamente refieren sus disputas a una tercera persona imparcial, entiéndase un árbitro. Es una figura jurídica de naturaleza contractual. *Municipio Mayagüez v. Lebrón,* 167 DPR 713, 720 (2006). Es el método de solución de disputas más formal que existe como alternativa al litigio tradicional. *Indulac v. Central General de Trabajadores*, 207 DPR 279, 293 (2021), citando a *Aut. Puertos v. HEO*, 186 DPR 417, 424 (2012).

Ahora bien, aun cuando en Puerto Rico existe una fuerte política pública a favor del arbitraje, este mecanismo se utilizará solo si las partes lo han pactado así y en la forma como lo hayan pactado. Si se cuestiona directamente la validez de un acuerdo arbitral, corresponde a los tribunales dilucidar el asunto. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC.*, 208 DPR 263, 282 (2021). Luego de establecer la existencia de un acuerdo de arbitraje válido y exigible, "lo prudencial es la abstención judicial, aunque esa intervención no esté vedada". Lo anterior, pues "una vez acordado el arbitraje, los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento al arbitraje acordado". *Íd.*, citando a *S.L.G. Méndez-Acevedo v. Nieves Rivera*, 179 DPR 359, 368 (2010) y *Municipio Mayagüez v. Lebrón*, supra, pág. 721.

**D.**

Es norma trillada de derecho que las partes -incluso los que comparecen por derecho propio- tienen el deber de cumplir fielmente las normas para el perfeccionamiento de los recursos ante este foro apelativo. Es decir, estos deben observar rigurosamente las disposiciones reglamentarias establecidas para la forma, contenido, presentación y notificación de los escritos. *Hernández Jiménez, et als. v. AEE,* 194 DPR 378, 382-383 (2015). Ello, ante la necesidad de colocar a los tribunales apelativos en posición de decidir correctamente los casos, con el beneficio de un expediente completo que permita conocer claramente la controversia que tiene ante sí. *Soto Pino v. Uno Radio Group,* 189 DPR 84, 90 (2013).

De no observarse las disposiciones reglamentarias sobre el perfeccionamiento, nuestro ordenamiento autoriza la desestimación del recurso. Véase, *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 290 (2011). Claro está, ante la severidad de esta sanción, nuestro Tribunal Supremo exige que nos aseguremos que el quebrantamiento de dichos postulados haya provocado un impedimento real y meritorio para que podamos considerar el caso en los méritos. Por lo tanto, solo si se cumple con dicho parámetro procederá la desestimación. *Román et als. v. Román et als.,* 158 DPR 163, 167 (2002).

En suma, la parte compareciente tiene que perfeccionar su recurso al tenor de los preceptos de la ley vigentes y de nuestro reglamento. De lo contrario, este Tribunal no estará en posición de revisar el dictamen recurrido. *Morán v. Martí,* 165 DPR 356, 367 (2005).

Por otro lado, sabido es que el contenido del recurso de revisión judicial se encuentra regulado por nuestro Reglamento. La Regla 59 del Reglamento del Tribunal de Apelaciones, In re Aprob. Enmdas. Reglamento TA, *supra,* págs. 81-86, establece que dicho

escrito deberá incluir, entre otras cosas, un "Cuerpo". Este, a su vez, debe contener un señalamiento breve y conciso de los errores que a juicio de la parte recurrente cometió el organismo, agencia o funcionario recurrido o funcionaria recurrida, así como una discusión de los errores señalados, incluyendo las disposiciones de ley y la jurisprudencia aplicables. Regla 59 (C)(1)(e) y (f) del Reglamento del Tribunal de Apelaciones.

### III.

En su escrito, aunque el recurrente no realizó señalamiento de error alguno, hace constar su inconformidad con la decisión del DACo de desestimar su querella por falta de jurisdicción.

Analizado el expediente, concluimos que no incidió la agencia recurrida al emitir su dictamen. De este se desprende que el contrato entre las partes contiene una cláusula de arbitraje que dispone cuál es el foro con jurisdicción sobre la materia. Según las determinaciones de hecho números 4, 5 y 7 del DACo, la cláusula 11(a) el contrato concernido establece que las partes aceptaron intentar primero resolver cualquier disputa de manera informal y de buena fe. En armonía con lo anterior, la cláusula 11(b) del contrato detalla que, de no lograr un acuerdo informal, las partes podrían comenzar determinadas acciones formales. Entiéndase, que, si no se llega a un acuerdo de manera informal, la disputa, incluyendo la determinación del alcance o aplicabilidad del pacto de arbitraje, se someterá ante un árbitro. La referida cláusula puntualiza que el arbitraje será el único medio de resolución de controversias, salvo que una de las partes tenga permitido acudir al Tribunal.

En virtud de lo antes expuesto, concluimos que el recurrente no nos colocó en posición de decretar la nulidad de la cláusula de arbitraje o de establecer que hubo fraude y engaño al momento de suscribirse el contrato. Así, resulta evidente que el recurrente debe

someter su reclamo contra la parte recurrida, en primera instancia, mediante el procedimiento del arbitraje.

En suma, revisadas las conclusiones de derecho del DACo en todos sus aspectos, colegimos que el recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que estas merecen. La decisión de la agencia fue razonable y se dictó bajo el marco doctrinal adecuado. En consecuencia, confirmamos la *Resolución* impugnada.

Advierta el recurrente que este Foro no está pasando juicio sobre los méritos de la querella. Por ende, una vez sometida la misma al proceso de arbitraje, si no resulta favorecido, podrá recurrir al foro judicial, de entenderlo necesario.

**IV.**

Por los fundamentos antes expuestos, se confirma el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones